IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| YELLOWSTONE INSURANCE EXCHANGE, RRG,<br><br>Plaintiff,<br><br>vs.<br><br>BROADWATER HEALTH CENTER n/k/a BILLINGS CLINIC BROADWATER; AND WILDERNESS MEDICAL STAFFING, INC.,<br><br>Defendants. | CV 24-21-H-KLD<br><br>ORDER |

This matter comes before the Court on Defendant Wilderness Medical Staffing, Inc.'s motion to dismiss Plaintiff Yellowstone Insurance Exchange, RRG's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11). For the reasons discussed below, the motion is granted.

1

I.  **Background**[1]

Defendant Broadwater Health Center ("Broadwater") operates a health care facility in Townsend, Montana and is now known as Billings Clinic Broadwater. (Doc. 8 at ¶ 2). In January, 2019, Broadwater entered into an Advanced Practice Provider Locum Tenens Agreement ("Locum Tenens Agreement") with Defendant Wilderness Medical Staffing, Inc. ("WMS"). (Doc. 8-2 at 6). Under the terms of that agreement, WMS provided Physician Assistant Gregory Sayers ("PA Sayers") as an independent contractor to work at Broadwater. (Doc. 8 at ¶¶ 3, 6). Notably, the Locum Tenens Agreement states "Client agrees to indemnify WMS, and shall hold WMS harmless, from any losses, damages, liabilities and expenses arising out of, in connection with, or as a result of [advanced practice provider] rendering medical services to the patients of Client." (Doc. 8-2 at 3).

While providing healthcare services at Broadwater, PA Sayers was supervised by Dr. Carol Bridges. (Doc. 8 at ¶ 4). In November, 2019, PA Sayers provided care to patient Kathleen Shindoll. (Doc. 8-4 at ¶¶ 11-12). That care became the basis for a medical malpractice lawsuit ("Underlying Lawsuit") filed by Shindoll against PA Sayers, WMS, Broadwater, and Dr. Bridges. (Doc. 8-4).

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Amended Complaint. (Doc. 8).

Plaintiff Yellowstone Insurance Exchange, RRG ("Yellowstone") is an "insurance exchange and risk retention group" with its principal place of business in Tennessee. (Doc. 8 at ¶ 1). Yellowstone issued to Broadwater a Hospital Professional Liability Policy ("The Policy") prior to the initiation of the Underlying Lawsuit. (Doc. 8-1).

Yellowstone provided a defense to both Broadwater and WMS in the Underlying Lawsuit. Yellowstone's defense for WMS was subject to a reservation of rights.[2] (Doc. 8 at ¶ 16; Doc. 12-3). The reservation of rights document indicates that WMS submitted a tender of defense to Yellowstone, following the initiation of the Underlying Lawsuit. (Doc. 12-3 at 1). The claims in the underlying lawsuit were eventually settled. In the Amended Complaint, Yellowstone alleges that on behalf of WMS it paid $83,333.00 to settle the case and $46,989.83 in attorneys fees and costs.[3] (Doc. 8 at ¶ 17).

Following the resolution of the Underlying Lawsuit, Yellowstone filed its Complaint in this matter on February 26, 2024 (Doc. 1) and an Amended Complaint on March 18, 2024. (Doc. 8). The Amended Complaint includes four

---

[2] The reservation of rights document was attached to WMS' brief in support of its motion to dismiss and not to the Amended Complaint. The document is referred to in the Amended Complaint (Doc. 8 at ¶ 16) and is therefore incorporated by reference. *See Coto Settle. v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[3] Other documents filed by Yellowstone indicate these amounts are inaccurate and that the actual sums are higher. (Doc. 22 at 4). Ultimately, any such discrepancies are irrelevant to the resolution of the instant motion.

counts against WMS and Broadwater. Count I requests declaratory judgement regarding the parties' rights, obligations, and liabilities under The Policy. (Doc. 8 at ¶¶ 21-31). Count II alleges a claim for breach of contract against Broadwater. (Doc. 8 at ¶¶ 32-35). Count III alleges a claim for breach of the implied covenant of good faith and fair dealing against Broadwater. (Doc. 8 at ¶¶ 36-41). Count IV alleges a claim of unjust enrichment against WMS and Broadwater. (Doc. 8 at ¶¶ 42-44).

WMS has filed a motion to dismiss the claims against WMS on the grounds that Yellowstone has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (Doc. 11). The motion is fully briefed.

## II.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). When reviewing a Rule 12(b)(6) motion to dismiss, the court is to accept all factual allegations in the complaint as true and construe the pleading in the light most favorable to the

nonmoving party. *Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

The court's review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that "a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To withstand a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). This means that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts alleged must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at

555). The *Twombly/Iqbal* plausibility standard is not "akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

**III.  Discussion**

WMS maintains Yellowstone's request for declaratory judgment (Count I) fails to state a claim upon which relief can be granted because no actual case or controversy exists between the parties to support a claim for declaratory judgment. WMS alleges that Yellowstone's claim is based in contract law and therefore requires contractual privity between the parties to support a declaratory judgment action. Because WMS is not an insured under The Policy, it further alleges that it has no rights under The Policy, and that Yellowstone and WMS have no contractual privity.

In response, Yellowstone maintains that a case and controversy does exist between WMS and Yellowstone. Yellowstone argues that the parties disagree as to whether Yellowstone was contractually obligated to provide WMS defense and indemnification and that WMS demanded defense and indemnification from Yellowstone prior to the resolution of the Underlying Lawsuit.

WMS also argues that Yellowstone's claim for unjust enrichment (Count IV) fails to state a claim upon which relief can be granted. In support, WMS raises

three primary arguments. First, WMS argues it was not inequitable for WMS to accept or retain the benefit of defense and indemnification from Yellowstone. WMS alleges it was owed this benefit from Broadwater and that Yellowstone only provided the benefit to fulfill Yellowstone's obligations to Broadwater. Second, WMS argues that unjust enrichment is not available to Yellowstone because an adequate legal remedy exists in the form of a breach of contract claim against Broadwater. Finally, WMS argues that unjust enrichment is not available to Yellowstone because Yellowstone voluntarily paid for WMS' defense and indemnification without a contract.

In response, Yellowstone maintains that it did not voluntarily provide defense and indemnification to WMS. Rather, Yellowstone argues, it provided those benefits following WMS' demand and in light of the potential for adverse consequences under Montana law should it have refused. Yellowstone further maintains that it would be inequitable for WMS to retain the benefit of defense and indemnification.

### A.   Unjust Enrichment

Unjust enrichment is a claim sounding in equity, which serves "to prevent or remedy inequitable gain by another." *Assoc. Mgmt. Serv. v. Ruff*, 424 P.3d 571, ¶ 64 (Mont. 2018). The elements of an unjust enrichment claim are: "(1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the

benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Assoc. Mgmt. Serv.*, at ¶ 65. A claim for unjust enrichment does not require proof of a wrongful act or conduct; a party need only prove "that a party unjustly gained something of value, regardless of wrongful conduct." *Assoc. Mgmt. Serv.*, at ¶ 65. The remedy for unjust enrichment is restitution. *Assoc. Mgmt. Serv.*, at ¶ 65.

Unjust enrichment is not available where an adequate legal remedy is available to the claimant. *Montana Digital, LLC v. Trinity Lutheran Church, 473 P.3d 1009,* ¶ 11 (Mont. 2020). Likewise, "the equitable remedy of unjust enrichment is unavailable where there is a legal contract between the parties." *Ryffel Family Partnership, Ltd. v. Alpine Country Construction, Inc.*, 386 P.3d 971, ¶ 32 (Mont. 2016). If a valid and enforceable contract "defines the obligations of the parties as to matters within its scope," an unjust enrichment claim is not warranted. *Assoc. Mgmt. Serv.*, at ¶ 67.

Here, WMS raises three arguments regarding unjust enrichment. First, WMS argues that the third element of unjust enrichment is not supported by the facts alleged in the Amended Complaint. Specifically, WMS argues "Yellowstone cannot establish that its defense and indemnification of WMS was inequitable under the circumstances." (Doc. 12 at 10). Second, WMS argues that that unjust

enrichment is not available because Yellowstone has adequate legal remedy in the form of breach of contract claims against Broadwater. Finally, WMS argues that unjust enrichment is not available because "Yellowstone voluntarily bestowed a valuable performance onto WMS without a contract, which provides a sufficient basis to deny Yellowstone's unjust enrichment claim against WMS." (Doc. 12 at 10). In response, Yellowstone argues that "it would be inequitable for WMS to retain the benefit of defense costs and indemnity, to the tune of $136,325.66, and leave either Yellowstone or Broadwater holding the bag." (Doc. 22 at 11).

 Based on the briefing, there is apparently no dispute between the parties regarding the first and second elements of unjust enrichment. However, the parties do dispute whether the third element is satisfied. The third element of unjust enrichment requires that the acceptance or retention of the benefit be inequitable. *Assoc. Mgmt. Serv.*, at ¶ 65.

 WMS maintains Yellowstone's defense and indemnification of WMS stem from the contractual obligations between Yellowstone and Broadwater. As alleged in the Amended Complaint, Broadwater was a named insured under The Policy. (Doc. 8 at ¶ 2). In turn, under the Locum Tenens Agreement, Broadwater agreed to indemnify WMS and hold WMS harmless "from any losses, damages, liabilities and expenses arising out of, in connection with, or as a result of [advanced practice provider] rendering medical services to patients of [Broadwater]." (Doc. 8-2 at 3).

WMS maintains that under the terms of the Locum Tenens Agreement, Broadwater had an obligation to defend and indemnify and WMS. Therefore, WMS argues that the benefit it received—the defense and indemnification in the underlying lawsuit—was not unjust because (1) it expect to received that same benefit under its agreement with Broadwater and (2) Yellowstone provided the benefit in fulfilment of obligations to Broadwater under The Policy. (Doc. 32 at 9-10).

    The Court finds that it was not unjust for WMS to receive the benefit of defense and indemnification. The facts alleged in the Amended Complaint, taken as true and construed in the light most favorable to Yellowstone, establish that WMS was owed the benefit of defense and indemnification under the Locum Tenens Agreement and there is no injustice in WMS receiving and retaining that benefit.

    The Restatement (Third) of Restitution and Unjust Enrichment emphasizes the significance of circumstances under which the benefit in question is received. (2011). For instance, § 1, comment d states "[r]estitution is concerned with the receipt of benefits that yield a measurable increase in the recipient's wealth." § 2, comment b likewise states "[t]o be the subject of a claim in restitution, the benefit conferred must be something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified." Following this guidance, a benefit that a defendant is otherwise owed and that is

10

acquired under justified means would not satisfy the requirements of unjust enrichment.

Montana Supreme Court jurisprudence is in apparent agreement with these principals regarding the receipt of benefits. For instance, in *A.C.I. Constr., LLC v. Elevated Prop. Investments, LLC*. the Court affirmed a finding of unjust enrichment where the defendant "reaped a substantial *unmerited* financial benefit . . . ." 495 P.3d 1054, ¶ 25 (Mont. 2021) (emphasis added).

While it may ultimately be the case that it was inequitable for Yellowstone (and not Broadwater) to bear the cost of defense and indemnification, the resolution of the issue at hand turns on whether the *receipt* of the benefit was inequitable. The facts alleged in the Amended Complaint make clear that WMS had a reasonable expectation that it would receive defense and indemnity from Broadwater. Rather than receiving an unmerited benefit that would have increased its wealth, WMS received a merited benefit that it was otherwise owed under its agreement with Broadwater. It is irrelevant to WMS' financial position whether the funds originated with Yellowstone or Broadwater

Therefore, the acceptance and retention of the benefit was not unjust and the third element of unjust enrichment cannot be satisfied. Because the third element cannot be satisfied, Yellowstone has failed to state a claim for unjust enrichment against WMS.

## B. Declaratory Judgment

Where, as here, a declaratory judgment action is in federal court based on diversity jurisdiction, the propriety of granting declaratory relief is a procedural matter to which federal law applies but the underlying substantive issues are governed by state law. *Paul Evert's RV Country, Inc. v. Universal Underwriters Ins. Co.*, 2016 WL 3277175, *2 (E.D. Cal. June 14, 2016) (citing *Golden Eagles Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1997), overruled on other grounds by *Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998)). Thus, the Court applies Montana law to all substantive legal issues. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

Under the Declaratory Judgment Act (the "Act"), federal courts may declare the rights and other legal relations of any interested party involving an actual controversy within its jurisdiction. 28 U.S.C. § 2201(a). The Ninth Circuit has held that in actions for declaratory judgment under the Act, "the district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The determination of whether a justiciable case or controversy exists for purposes of declaratory judgement requires courts to analyze "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Shell Gulf of Mexico Ins. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (citing *Maryland Cas. Co. v. P. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

The Ninth Circuit has also held that district courts should not grant declaratory judgment where doing so would serve no purpose. "It should go without saying that a declaratory judgment action must serve some purpose in resolving a dispute." *Exxon Ship. Co. v. Airport Depot Diner, Inc.,* 120 F.3d 166, 168 (9th Cir. 1997).

Here, WMS argues that no case or controversy exists between Yellowstone and WMS. WMS asserts that Yellowstone's claim for declaratory relief is based in contract law and that no contractual privity exists between Yellowstone and WMS. (Doc. 12 at 8). WMS states "WMS has no rights relating to the Policy, no obligations under the Policy, and is not even mentioned in the Policy in any way." (Doc. 12 at 9).

In response, Yellowstone argues that a case or controversy does exist because WMS demanded and accepted defense and indemnification from Yellowstone while it had no rights relating to The Policy. (Doc 22 at 6). Yellowstone further states "[t]here is a case and controversy between Yellowstone

and WMS, as Yellowstone has asserted WMS was not entitled to these expenses under the Policy." (Doc. 22 at 9).

Curiously, Yellowstone and Broadwater are in apparent agreement regarding the obligations that would be clarified by declaratory judgment. Yellowstone's Amended Complaint alleges the parties "dispute whether coverage exists under The Policy for the claims asserted in the Underlying Lawsuit against the Defendants." (Doc. 8 ¶ 22). While WMS and Yellowstone disagree on several issues in this case, Yellowstone's request for declaratory judgment concerns a narrow issue on which the parties agree. The request solely concerns obligations arising under The Policy. WMS' briefing makes clear that WMS does not presently contend that The Policy obligated Yellowstone to provide defense and indemnity in the underlying lawsuit. Indeed, WMS and Yellowstone are in agreement concerning the overall *lack* of obligation between WMS and Yellowstone under The Policy.

Yellowstone has failed to allege any facts to show that WMS at any point argued The Policy obligated Yellowstone to provide WMS with defense and indemnification. Neither the Amended Complaint nor the attached documents reference such an argument. A review of all facts and documents included in the briefing and attached exhibits yields the same result—no facts to show WMS has argued The Policy obligated Yellowstone to provide defense and indemnification.

In its response brief, Yellowstone asserts that WMS demanded defense and indemnification from Yellowstone and therefore took the position that it was owed as much under The Policy. The demand letter where WMS would have made such a claim (Doc. 12-2) was not filed as an attachment to the Amended Complaint, nor was it directly referenced in the Amended Complaint. Instead, the letter was filed as an attachment to WMS' motion to dismiss. (Doc. 12). Even assuming the letter could properly be considered under a 12(b)(6) motion, nowhere in it does WMS advocate for the position that it is owed anything under The Policy. Instead, WMS's letter states (1) WMS is owed defense and indemnification under the Locum Tenens Agreement and (2) Yellowstone is Broadwater's insurer. (Doc. 12-2 at 1,3). The Locum Tenens Agreement is the only contract named in the demand letter. Overall, there is no indication that WMS and Yellowstone have taken contrary positions regarding The Policy. Therefore, Yellowstone has failed to allege the facts of an actual controversy to support its request for declaratory judgement.

Beyond the lack of apparent controversy between the parties, it is clear that issuing a declaratory judgment would serve no purpose as to the relationship and litigation between Yellowstone and WMS. *Exxon Ship. Co.,* 120 F.3d at 168. Given Yellowstone's failure to state a claim for unjust enrichment, there is no indication that issuing a declaratory judgement would do anything to change the position or

15

relationship between WMS and Yellowstone. Both parties are in apparent agreement concerning the contents of The Policy and Yellowstone has no additional claims against WMS to resolve. Therefore, the claim for declaratory judgement should be dismissed in so far as it involves WMS as a party to case.

      This is not to say that the Court will dismiss Count I of the Amended Complaint as it relates to the dispute between Yellowstone and Broadwater. It may be the case that a declaration regarding WMS' rights under the contract is relevant to the dispute between the remaining parties to the case. Therefore, it would be inappropriate to foreclose the possibility of declaratory judgement regarding WMS as an entity whose receipt of defense and indemnification may affect the resolution of Yellowstone's claims against Broadwater. Acknowledging that possibility, the Court holds only that it is appropriate to dismiss Count I as it relates to WMS as a party.

## IV.  Conclusion

      For the reasons discussed above,

//

//

//

IT IS ORDERED that Defendant Wilderness Medical Staffing, Inc.'s motion is GRANTED. Wilderness Medical Staffing, Inc. is hereby DISMISSED as a party to the case.

**IT IS ORDERED**.

DATED this 7th day of February, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge